The next case, Centurion v. Lynch May it please the Court, my name is Liliana Chernovska and I represent the Petitioner, Mr. Charles Centurion. The question before this Court is whether an offense committed before the effective date of IHRA-IHRA makes a returning lawful permanent resident applicant for admission under 8 U.S.C. Section 1101A13C5 and whether the Board misinterpreted the statute and the decision of the Supreme Court in Vartalis v. Holder denying Mr. Centurion's motion to reopen Suspante. In Vartalis, the case that you cite, the Supreme Court says the entire 1101A13C5 phrase committed an offense identified in Section 1182A2 on straightforward reading appears to advert to a lawful permanent resident who has been convicted of an offense under Section 1182A2 or admits to one. Now even if this statement was dicta, why shouldn't we follow it? Even if it is dicta, I think a good way to think about this is a two-step approach. First we decide whether a crime was actually committed. The second factor would be when was the crime committed. If you read above the line of this footnote, Justice Ginsburg, about a sentence later, says ordinarily to determine whether there is clear and convincing evidence that an alien has committed a qualifying crime, the immigration officer at the border would check the alien's records for a conviction. So here the footnote is basically saying that in the first aspect of that, whether a crime was committed, we can look at conviction or you can also look at admission to the crime or the admission to sentence. Another way of looking at it, the court is saying that in practical terms that the consequences of the statutory section only attach on conviction because it's only when the border official knows that the lawful permanent resident has committed a crime that she's been convicted of one. Well, the actual language of the statute says both convicted of who admits having committed or who admits committing acts which constitute the essential elements. So already based on the language in the statute, it is not just the conviction that matters. And we should look at the conviction. No, but it's the conviction or the admission. Neither of those is the actual commission of the offense. None of those suggest that if the government could sort of prove that the person committed an offense sometime in the past that he had not been convicted of and had not yet admitted or had not admitted, that that would be enough. Right. So the conviction or the admission to the crime is relevant to the extent that we look at whether or not a commission of the crime actually occurred. And then the second step would be to decide when that commission actually happened. You know, the plain language of the statute is has committed an offense identified in section 1180-282. I mean, if we were talking, I mean, there are three levels here, it seems to me. And I'm going to ask you about the third, ultimately. The first is what does the plain language say if we were operating on a clean slate, right? The second, which you're relying on primarily or additionally, is the Supreme Court interpreted that language in Vartelis, and we're trying to parse what Vartelis tells us, right? The third, though, is we already have interpreted Vartelis, the very argument that you're making about what Vartelis really means in interpreting this statute was presented in Centurion 1 and was rejected. So the real question I have is why aren't we bound by that? Why wouldn't we be bound by that even if the case wasn't named Centurion but was named Jones against Lynch and was some other guy's case? Why aren't we bound by that precedential opinion to reject your interpretation of Vartelis because we rejected it in the prior opinion? Right, Your Honor. I'm glad you brought that up. Actually, in Centurion 1, the question was about eligibility for a waiver under section 212C. The language in that section of the statute is different from the language that is at issue here, right, section 1101. So I think the decisions in Centurion 1 should be limited to the discussion of the eligibility to the waiver. Furthermore, in terms of— Wasn't it—I understand that, but wasn't it interpreting also what the Vartelis opinion meant? And, you know, I heard Judge Katzmann asking you questions about what Vartelis—how Vartelis should be read. And it's interesting to me that he thinks that today, but what binds me is what he wrote in the opinion in Centurion 1 where he— Judge Jacobs wrote it. Judge Jacobs wrote it, but Judge Katzmann was on the panel. That panel said the same thing, essentially, about what Vartelis means that Judge Katzmann was asking you about just now, right? Right. So in that decision, right, even that court says that to determine—and I'm paraphrasing—but to determine whether—I apologize. In the Second Circuit decision in Centurion 1, they even discussed the Supreme Court's focus on past wrongful conduct, and I'm paraphrasing, does not necessarily conflict with the focus on the date of conviction because the language is different between the wording of Vartelis and Sincere. So in Vartelis, the language is broader. And if you look at the decision in Vartelis— And also, I mean, I suppose the argument could be made that in Centurion 1, the focus was on whether Domond had been overruled— Right, Your Honor. And not so much with the underlying question of the retroactivity, the crucial date of the retroactivity analysis. Yes, Your Honor, I completely agree. As you know, the Domond decision was also about 212C eligibility, so it is a different question. And I do believe that this argument, that Mr. Centurion shouldn't have been found to be based on this plain language of the statute and the Vartelis decision, is a completely different argument altogether. So going back to the plain reading of the text, as I already mentioned, the plain text of the statute in Section 1101 says, has committed an offense identified in Section 1182. Now this definition doesn't say convicted or pled guilty of. The plain language is committed an offense, which indicates that the intention of the Moreover, based on the plain construction of this section of the statute, the relevant language in Section 1182 must relate to the identification of the crime. And this language is in Roman numeral I and Roman numeral II. And I quote, A crime involving moral turpitude other than a purely political offense, or an attempt or conspiracy to commit such a crime, or Roman numeral II, a violation of, or a conspiracy or attempt to violate any law or regulation of a state, the United States, or a foreign country related to a controlled substance, as defined in Section 802 of the title, is inadmissible. So here, none of the language discusses a conviction. So the plain reading of the statute altogether says that it has committed an offense identified in that subsection where no reference to conviction is made. Therefore the scope of 8 U.S.C. Section 1101 has to be defined by only the commission of the crime. As the word convicted and conviction are used throughout the statute, the nonexistence of the word in the relevant subsection indicates that conviction was not intended to be the identifying factor by the drafters. The law case further supports this plain reading of the statute. In Barrick Heavy Holder, this court ruled that the stop time rule Can I, can I, I hope I'm trying to help you out with this. In, in the, isn't the simple, what this boils down to is the argument that a statute that explicitly a list of offenses in another statute. That other statute, for its own purposes, is talking about conviction. But the list is what's incorporated, not the word conviction. Yes, Your Honor. Is that essentially the argument that you're making? That's exactly the argument, yes. So in Barrick Heavy Holder, the stop time rule as this court has decided But now, excuse me, this part is not trying to help you. In, just trying to get an answer, Vartelis was interpreting exactly that language, right? That Vartelis is, unlike Centurion 1, is about the stop time rule, not about 212c relief. Yes, Your Honor. So that's why it still comes back to me, our court, albeit for another purpose, was in So I'm, I'm still left with puzzlement over why Centurion 1 does not explicitly reject the very interpretation of Vartelis that you are advancing here. So I think if you read the decision of Vartelis, and even the decision of Centurion 1, as understanding the two separate questions, and the first being whether the commission, or whether the contrary to our kind of interpretation of the statute, right? The conviction in subsection, I think, 1, says anything convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of. That text is related to deciding whether the crime was actually committed. You look at the conviction, or you look at the admission of the crime, or you look at the admission for the essential elements. That's how you know that the crime that is enumerated in these subsections actually occurred. Then the next step, which was not necessary in Vartelis, is going and deciding when the commission actually occurred. In Vartelis, because both conviction and commission occurred pre-the enactment of the statute, Justice Ginsburg only needed to look at the conviction because that automatically made the commission of the crime prior to the enactment of the statute. So they just didn't reach this because they had different facts? Yes, Your Honor. Is that your argument? So my argument is that, in that decision, Justice Ginsburg is specifically talking about the commission of the crime throughout the entire decision, but yes, that they did not specifically have to reach that question because the facts of that case were different than the ones present here. And we're supposed to fill in the blanks now? Yes, Your Honor. I believe that is your job today. Thank you. You're over your time, but if you want to say a little more, go ahead. Okay. So just to quote the Vartelis decision in Justice Ginsburg, she says that Vartelis, and I quote, we have several times stressed, engaged in no criminal activity after Uriah's passage. He simply took a brief trip to Greece, anticipating a return without the incident as in past visits to his parents. No indefinite and continuing crime occurred, and Senator Vartelis was apprehended because of a pre-Uriah crime he was helpless to undo. Similar to Vartelis, Mr. Centurion was also apprehended because of a pre-Uriah crime he was helpless to undo. The crime in question happened 26 years ago, and six years prior to that. If I could give you a bit of unsolicited advice. Sure. You're making a very sophisticated argument, and I've learned a great deal from it, and I appreciate that. If you spoke a little slower, it would be easier to follow. This is very intricate stuff. Of course, Your Honor. And I'm finding it a little hard just to keep pace with you. Of course. I'm working on that. Mr. Centurion had no way to change the commission of his crime, and as such, Uriah had impermissible retroactive effect on his case under Vartelis. Due to BIA's legal error in misinterpreting both the text of the statute and the decision of Vartelis, the case should be remanded to the BIA to review the facts of the case under the correct legal standard of commission as opposed to conviction. That would be all. Thank you. Good morning, Your Honors. Attorney Sabatino F. Leo on behalf of the United States Attorney General. I think what is clear here is that the petitioner was properly placed in removal proceedings as a lawful permanent resident seeking admission under 8 U.S.C. 1103 C.13.5, and the petitioner's case was foreclosed by this Court's decision in Centurion 1 as it interpreted the Supreme Court's decision in Vartelis. I think Centurion 1 is about a different statutory section, right? Centurion 1 discusses the applicability of Attorney General's discretionary waivers for 212 C. However, not only does this Court discuss 1103 A.13.C. 5 in it and actually goes further than the Vartelis decision, in order for the 212 C. discretionary waiver to apply, in order for the Court to get to those legal gymnastics and get to even the 212 C. decision, the lawful permanent resident who was petitioner at that particular time had to be seeking admission. If he was not seeking admission as a lawful permanent resident, then the 212 C. application is irrelevant. So the mere fact that he's seeking a 212 C. waiver is admittingly that he is now a lawful permanent resident seeking admission, and now he needs a discretionary waiver of inadmissibility under 212 C. Could you help me out with something? I'm old enough to remember when there were two different things that could happen to an alien. You could be not admitted or you could be deported. And it was my understanding that one or the other of the many statutory overhauls in my lifetime of immigration law tried to meld that. Now people are in removal proceedings. And I'm trying to figure out, is there any practical difference here? Maybe there's a very practical difference that when you come back to the border, they either ask you questions or they don't, and that may be all that matters here. But as a legal matter, is there any difference between what happened to Mr. Centurion as trying to be admitted to the United States or readmitted, and what might have happened if the agent at the border had said, fine, come on in, you're an LPR, you're okay, you're immediately had notified somebody to commence removal proceedings? Would that be any different? Do you understand what I'm asking? And I do. And the practicality with regarding admissibility of whether or not an individual is admissible at the border, and then subsequently placed, or subsequently placed in removal proceedings. There would be, the simple fact is that this particular alien would be placed in removal proceedings under 230, under 240 proceedings as an alien who has convicted a controlled substance offense under 237. Would there be any difference in the legal standard that would be applied, and what kinds of discretionary relief would be available to him if that had happened, rather than he was treated as someone applying for admission? No, Your Honor. Not to my understanding. And what I think is important to recognize is that what Arrera did, it said, is if you're a lawful, Arrera did an effective in 1 April 1997, and what Arrera says is, if you're a However, comma, there is a certain number of exceptions where, if you're coming back and being admitted into this country, as a result, if you've committed any number of certain acts, you're no longer just freely being able to go back and forth, you're now seeking admission. Therefore, at the border, you're presenting your papers, and if the determination is made that you're no longer, or you're not admissible, as a result, you're placed in, you're charged with 212-8, in this particular sense, 212-82, you're now placed in admissibility, you're now inadmissible, meaning you are no longer admissible, and therefore, you needed, and therefore, under, now under Arrera, there's no longer a 212-C waiver. I know it's somewhat complex here, but I understand, but there's no longer a 212-C waiver, and what happens is, is what the immigration officer, and I think this is the amazing part of, I think, Vartelis, was that you are, you have immigration officers who are charged with understanding this complexity, and in order to make that determination of whether or not petitioner is admissible or inadmissible, they look into their system, and what the Vartelis court, what the Supreme Court of Vartelis said is, listen, it's not for immigration officers to conduct what they refer to as a pie powder court, to now make this long determination of whether or not this petitioner actually committed offense, they're going to look for convictions, and what this court even did, and I think this court in Centurion I actually took it a step further, because this court in Centurion I, language not used by the Vartelis court, said 1103 AC5 is narrowly focused on convictions. As Your Honor indicated previously, we don't have a clean slate here. We've had the statute, you know, and so we can talk about the intent of Congress ad nauseam here, but we already have precedential opinions that have, in fact, interpreted 1103 AC5 in the context of these proceedings. I understand that argument, but the decision also says, Centurion I, that there are two different statutes and different statutory schemes. It does not in any way categorically make the conclusion that you would have us draw, and so you've got, you could make the arguments that you're making quite, you know, I understand those arguments, but I don't read Centurion I as necessarily leading to the result that you would have us draw. Our focus is really on Domond in that case, and so if you look at Domond, there are at least two cases, Domond says, an alien's loss of eligibility for 212C was triggered by conviction, whereas in the present, but here in the present context, the consequences theoretically attach when an alien has committed a certain offense that if you look at just in terms of the statutory language. Secondly, the Domond court, as I understand it, concluded that the loss of the possibility of discretionary 212C was a hardship rather than a new legal consequence, but in the present context, a permanent legal resident's loss of ability to enter the United States, as you've so well explained it, without proceeding through the alien admissions process, seems to me to be a more definitive new legal consequence, and the third point that I would make is that the Domond court observed that, and here I'm quoting, an alien would not rely on the possibility of discretionary relief from deportation when choosing to commit a crime, but in Vartalus, in Vartalus, the Supreme Court says that it is likely that a lawful permanent resident would have relied on pre-error immigration law in the context of 1101A13C5. So I understand that the argument that you're making, but it's not necessarily the case that if you think about Centurion I, that it necessarily leads to the conclusion that you're drawing. And I think that there's valid points there, Your Honor, and I understand your concern with regard to Domond and application of Centurion I, but if you look at Centurion I's language, even when discussing Domond, accordingly, we adhere to Domond's teaching that the legal regime enforced at the time of an alien's conviction determines whether an alien is entitled to 212 Charlie relief or 212C relief, and even more so with regard to Vartalus, there's a specific language with regard to plea and conviction. So we're in a situation here, and I understand your reliance and your discussion with regard to some semblance of reliance, although the Supreme Court has sort of veered away from reliance and has said it really is the legal regime at the time of the alien's plea and conviction, and why would that be? Because at the time an alien enters into a plea and conviction, perhaps staying in this country would be more important than doing time, doing six months in Rikers or somewhere else. So maybe, so that's why, that was the triggering mechanism. But I honestly think that Vartalus and Centurion, and Centurion really reading into Vartalus, again, we couldn't get to the 212C waiver issue in Centurion I had he not been in removal proceedings and not been an alien seeking admission under 1101 AC 13-5. And I think that's why this Court, as Your Honor, I know His Honor Judge Jacobs actually authored the opinion, delves into Vartalus in the opinion and says unequivocally these statutes are narrowly focused on convictions and goes ahead and quotes that entire section from the Supreme Court's decision in Vartalus, which states unflinchingly straightforward reading appears to advert to an LPR has been convicted of an offense under 212A2 or admits to one, admits to that conviction, all tying back to what? 1101 A13C-5. When we go back to this being put through admission procedures, I can see how this might make a big difference if, for example, a president said nobody of a certain, for a certain country is allowed to come here and that person is then arguing but I'm an LPR and maybe that by statute and then there's a response, well, no, it isn't because you have a prior conviction so you can be turned away at the border in effect. But I come back to Mr. Centurion, I take it was not turned away at the border, right? He was paroled in. He was paroled in for a subsequent determination. So I understand that at this moment he is not legally regarded as having been admitted to the United States and he still conceptually stands at the border but I'm still trying to understand why this makes any difference whatsoever to whether he's going to be chucked out of the country or not. He gets to be here while this is litigated. He has outlasted two attorneys general because Centurion 1 is Centurion against Holder. The briefs here are Centurion against Lynch and now it's Centurion against Sessions and boy, there were a couple of moments when it could have been Centurion against Yates or Centurion against Bainchi. You know, he's here. The question is, can he be told to leave? And I'm still having trouble understanding whether it makes, I think you told me, it makes no difference whatsoever to whether he has to leave, whether he is regarded as properly, he is regarded as seeking admission or whether he was in removal proceedings after having been admitted. The law on that is still the same. He still doesn't get any kind of discretionary relief. He still wouldn't get any, if he had been admitted, he still wouldn't get any discretionary relief. There would be no difference in the standard of whether he has to leave or not as between that and removal proceedings. Is that what I understood you to say? That's, that's my understanding. And again, I am not as well versed on the complexities between the, between the both of them. What I can tell you is, is that the whole purpose of paroling these individuals in is to make that determination of what their status is rather than right, really harshly to put it for lack of a better term, simply turning them away and letting them go. And is it to his advantage? What if he tries to come back later? Would he be guilty of a re-entry after deportation? Well, not to interrupt your honor, but he's subject to a removal order. So he's already, so yeah, so he's. That too works the same. Yeah. If he tried to come back, he'd be committing a criminal offense, whether he was not admitted or whether he was removed after being admitted. And, and, and he, and he's subject to a removal order as, as a result. And I'm not here to, uh, to parse out the complexities of the, the immigration nationality act. I, I learned more about it every single day myself, your honors. But I think in this particular situation, petitioner was properly placed in removal proceedings. Now, I mean, it's just as a matter of, of, of, of reading a statute. And I realized this is such a messy area of law and we're all trying to confront it. The language seems, uh, seems plain, right? That, um, an alien lawfully admitted for permanent residence in the United States shall not be unless the alien five has committed an offense identified in section 1182A2 of this title. So it uses the, the, the language, uh, uh, uh, committed an offense. Mm-hmm. What it does though, and I think what Vartelis and what this court does is, um, uh, and the Vartelis decision speaks unequivocally, the next words are identified in section 212A2. And what I think that Vartelis grasps on is 212A2 talks about conviction of certain crimes. And that's what they grasp on. And again, if you go, if you peel back the onion, so to speak, with regard to 212A2, and there is some, there's other language with regard to commission admitting acts in the sense, but the Vartelis court and this court in and of itself, I mean, in my opinion, grasp on that specific language as well. It's really about the conviction here because, because, and then, and then in Vartelis, it says straightforward reading and this court says narrowly focused. Again, not a clean slate here. We have some precedential decisions out there in my opinion that kind of speaks to our defense because in these particular circumstances, when this alien is seeking admission, what is the hard and fast date that these immigration officers are going to look to? They're going to look to convictions. We're not going to call into session, again, a pie powder court as the Supreme Court suggests. And I think that's really, I think really when you boil it down here, we don't have a statute. Are you arguing that this is just poor drafting when it says commission as opposed to conviction? No, I would, Your Honor, I would not suggest that it's poor drafting at all. I would suggest that the Vartelis court and this court actually got it right and interpreted it correctly by looking to 212A2, convictions of certain crimes. But I'm talking about the plain language of 1101A13C5, which talks about conviction. It talks about commission. Yeah, has committed an offense identified in section 1182A2. In criminal and related grounds, 1182A2, A is conviction of certain crimes. And I think that's what they're, I think that's on straightforward reading. Straightforward reading as the Supreme Court suggests, narrowly focused as this court suggests, and shouldn't even say suggests, it's indicated in its published decision that for purposes 1103A13C5, it is the conviction. And let's also kind of, in a situation about the factual, the facts of this particular case is pretty clear. He was convicted in 2007, post-Irera. So the conviction aspect of it, if Your Honor's find that it's a conviction, it's over at that particular point. So subject to further questions, I've gone over my time substantially and I apologize. And we were the ones asking you a question. Well, that concludes the Attorney General's presentation. And we would ask that the petition for review be finished. Can I just ask one question irrelevant to the case, but relevant to your client slash boss? Has the Justice Department, have Justice Department lawyers like you been given any instruction as to how Mr. Sessions prefers to be referred to in the captions of cases? I think we have used Jeff and we have used Jefferson B. And is there some? I do know. Oh good. Is there some official word on that? Yes, Your Honor. And it is Jefferson B. Sessions III. The third. Three Roman numerals. That's, and that's because on the Attorney General homepage, he does not go by that name. But that's the name. That's what I've been given. You've been given as instruction. Does he want a comma after Sessions? We had that issue with Mr. Holder. Is it Eric Holder comma junior or Eric Holder junior without a comma? That's an interesting question. These are important matters, you know. Yeah, he's inherited a large number of cases in which he's a defendant. And we have to change the names. And, you know, I'm always very, whether it's Muhammad Ali or Meadoworld Peace, if somebody wants to go by a certain name, I'm happy to call them by that name. And intend no disrespect. I want to get it right. Understood, sir. And we do have a point of contact that deals with the Second Circuit directly. So I'll make a note of it to my assistant director ASA. Thank you very much. Thank you, Your Honor. I'd like to make a couple of points, if I may. First, I believe the government makes too much of a conclusion that the government reaches about Centurion 1. If it was settled all that conviction is the only thing that matters to be placed before ERIRA or afterwards, then, for example, in the case of Gloria v. Holder, which is a published decision from last Thursday from the Second Circuit, wouldn't be remanded. For example, in that case, very similar facts, the same section of statute, 1101. And in that case, the commission of the crime, I think it was a RICO crime, happened prior to the enactment of ERIRA. And the conviction occurred afterwards. The petitioner in that case makes very similar arguments. And the court did remand the case for further fact-finding to determine when the date of the commission of the crime was. In fact, they remanded specifically and said, it's not futile, and I quote, because date of crime is potentially dispositive. And also noted that although it's not making a decision on Vartelis and if it would apply to that case, this indicates that this is not a settled area of law. It is not conviction. The commission of the crime is clearly at the very least relevant. And the Second Circuit has decided that four days ago. It's very helpful. Can I ask you the question I asked Mr. Leo? Suppose we agreed with you and sent this back and told the BIA to reopen their case and effectively to decide that your client did not have to go through admission procedures. The next day they file a removal notice against him. Is he substantively better off, other than the fact that the whole proceeding has to start over again? Is there any substantive argument, relief, defense that he can make use of that he hasn't already had the opportunity to make use of in the admissibility proceedings? I am not clear on that. I do not know if there's a substantive difference. I think this is obviously a very important area of law that the Second Circuit should determine because it is not clear, at least from Laurier v. Holder, whether the conviction commission question was not determined in Centurion 1. And so pertaining to that decision in Laurier v. Holder, if the question was conviction, it would have not been remanded. But the court clearly indicates that they think commission is relevant to whether or not Vertelez does apply. So, Your Honors, the express language of the statute is clear. There is no ambiguity. The alien who has committed an offense identified in Section 1182A2 would be found to be inadmissible under Section 1101. Once it is determined that a commission of the crime had occurred, the next logical step and necessary step in the case is to look at when that crime was committed. If prior to the enactment of ERIRA, then the Vertelez decision requires that the foodie doctrine is applied to those that go for a short trip abroad and reenter the U.S. as lawful permanent residents. If it's post-ERIRA, there's no impermissible retroactive effect, and the statute controls. This is the only logical conclusion based on the plain reading of the statute. Mr. Centurion respectfully requests that the court remand the case to the BIA for a decision based on the correct legal standard. Thank you both for your arguments. The court will reserve decision.